**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BAKIRA BAKER,** | : | |
| **EARLE WAYNE BROWN,** | : | |
| **DAVID ALLARD,** | : | **Civil Action** |
| **CARMELINDA ARPAIO,** | : | |
| **MICHELLE BARBARE,** | : | **No. _____** |
| **KELLY BAUMAN,** | : | |
| **LETICIA BUCKNER,** | : | |
| **PATRICIA BURNEY,** | : | |
| **KESHIA COTTON,** | : | |
| **TIFFANY ELLIS,** | : | |
| **ANTHONY GRAZIOSI,** | : | |
| **KENNETH HOCK,** | : | |
| **JANAE LING,** | : | |
| **LAREE McKINNEY,** | : | |
| **EDNY MICHEL,** | : | |
| **ERICA REESE,** | : | |
| **LAVONE RICHARDSON,** | : | |
| **CHRISTOPHER SAIN,** | : | |
| **TERESA SANDERS,** | : | |
| **JONTINEISE SCURRY,** | : | |
| **CANDACE SMITH,** | : | |
| **S. HAROLD SPRUILL, and** | : | |
| **CHARLENE TAYLOR** | : | |

     **Plaintiffs,**

**v.**

**FIRST ADVANTAGE LNS SCREENING
SOLUTIONS, INC., f/k/a LEXISNEXIS
SCREENING SOLUTIONS, INC.,**

     **Defendant.**

## C O M P L A I N T

## I.   PRELIMINARY STATEMENT

1.   Defendant First Advantage LNS Screening Solutions, Inc. (formerly known as

LexisNexis Screening Solutions, Inc.) (hereafter "LNS") is one of the nation's largest consumer

reporting agencies specializing in providing employee background reports to employers as part of their hiring operations.  Up until approximately August, 2013, LNS owned and operated a specialized database named "Esteem" or the "Retail Theft Contributory Database," which it offered its employer customers in the retail industry.  Using Esteem, LNS would issue consumer reports about supposed prior theft incidents, based not on criminal justice system records but rather on signed "Voluntary Admission Statements" ("VAS") contributed by an Esteem member and maintained by LNS in its proprietary Esteem database.

2.      Esteem was the subject of the recently concluded class action in this Court, *Goode et al. v. First Advantage LNS Screening Solutions, Inc*., No. 11-2950-JD, which settled class-wide claims for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

3.      Under the approved settlement agreement in *Goode*, among other things, (a) LNS ceased operating the Esteem system and agreed to provide copies of the VAS to class members upon their request and (b) class members who were falsely reported as thieves to prospective employers based on their presence in the Esteem database retained the right to pursue individual claims for actual damages against LNS.  This action is brought by 23 *Goode* class members who are seeking actual damages for false Esteem reports about them that were issued to employers.

4.      Plaintiffs are seeking damages for lost wages and for emotional and reputational harm, plus attorney's fees and costs, pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## II.    JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.  Venue is properly in this District, pursuant to 28 U.S.C. § 1391(a)(1), because Defendant "resides" in this District as defined in 28 U.S.C. § 1391(c)(2).

### III.   PARTIES

6.      Plaintiff **Bakira Baker** is an adult individual residing in Wilkes-Barre, Pennsylvania. Plaintiff is a member of the certified class in *Goode*.

7.      Plaintiff **Earl Wayne Brown** is an adult individual residing in Charleroi, Pennsylvania.  Plaintiff is a member of the certified class in *Goode*.

8.      Plaintiff **David Allard** is an adult individual residing in Grand Blanc, Michigan. Plaintiff is a member of the certified class in *Goode.*

9.      Plaintiff **Carmelinda Arpaio** is an adult individual residing in Newburgh, New York.  Plaintiff is a member of the certified class in *Goode*.

10.      Plaintiff **Michelle Barbare** is an adult individual residing in Duncan, South Carolina. Plaintiff is a member of the certified class in *Goode*.

11.      Plaintiff **Kelly Bauman** is an adult individual residing in Tampa, Florida.  Plaintiff is a member of the certified class in *Goode*.

12.      Plaintiff **Leticia Buckner** is an adult individual residing in Essex, Maryland. Plaintiff is a member of the certified class in *Goode*.

13.      Plaintiff **Patricia Burney** is an adult individual residing in Ocean Springs, Mississippi. Plaintiff is a member of the certified class in *Goode.*

14.      Plaintiff **Keshia Cotton** is an adult individual residing in Houston, Texas. Plaintiff is a member of the certified class in *Goode*.

15.      Plaintiff **Tiffany Ellis** is an adult individual residing in Lithonia, Georgia. Plaintiff is a member of the certified class in *Goode*.

16.      Plaintiff **Anthony Grazio**si is an adult individual residing in Long Beach, New

York.  Plaintiff is a member of the certified class in *Goode*.

17.     Plaintiff **Kenneth Hock** is an adult individual residing in Bloomington, Illinois. Plaintiff is a member of the certified class in *Goode*.

18.     Plaintiff **Janae Ling** is an adult individual residing in Fort Lauderdale, Florida. Plaintiff is a member of the certified class in *Goode*.

19.     Plaintiff **Laree McKinney** is an adult individual residing in Washington, D.C. Plaintiff is a member of the certified class in *Goode*.

20.     Plaintiff **Edny Michel** is an adult individual residing in Lake Worth, Florida. Plaintiff is a member of the certified class in *Goode*.

21.     Plaintiff **Erica Reese** is an adult individual residing in Prattville, Alabama. Plaintiff is a member of the certified class in *Goode*.

22.     Plaintiff **Levone Richardson** is an adult individual residing in Triangle, Virginia. Plaintiff is a member of the certified class in *Goode*.

23.     Plaintiff **Christopher Sain** is an adult individual residing in Memphis, Tennessee. Plaintiff is a member of the certified class in *Goode*.

24.     Plaintiff **Teresa Sanders** is an adult individual residing in sSpringfield, Massachusetts.  Plaintiff is a member of the certified class in *Goode*.

25.     Plaintiff **Jontineise Scurry** is an adult individual residing in Winter Haven, Florida.  Plaintiff is a member of the certified class in *Goode*.

26.     Plaintiff **Candace Smith** is an adult individual residing in Morton, Mississippi. Plaintiff is a member of the certified class in *Goode*.

27.     Plaintiff **S. Harold Spruill** is an adult individual residing in North Carolina. Plaintiff is a member of the certified class in *Goode.*

28.     Plaintiff **Charlene Taylor** is an adult individual residing in Hemingway, South Carolina. Plaintiff is a member of the certified class in *Goode*.

29.     Defendant First Advantage LNS Screening Solutions, Inc., formerly known as LexisNexis Screening Solutions, Inc.) ("LNS") is a corporation doing business in all fifty states. It is headquartered near Atlanta, Georgia.

## IV.   FACTS OF THE CASE

### A.    Defendant's Retail Theft Contributory Database ("Esteem")

30.     Among several employment screening products owned and marketed by Defendant LNS was a product known alternatively as "Esteem" or its Retail Theft Contributory Database ("RTCD").   According to the company, in its promotional material, this product "help[ed] organizations identify applicants with a history of theft or fraud."

31.     Esteem originated prior to the enactment of the Fair Credit Reporting Act (FCRA) as an informal means for retail stores to share with each other information about theft incidents possibly involving applicants for employment.   Over the years, the Esteem database and the number of retailers using Esteem grew substantially, and, in addition, Esteem was acquired (and resold) by a series of large consumer reporting agencies, including ChoicePoint, LexisNexis, and now First Advantage Corp.

32.     The subscribing member-participants in Esteem have included some of the nation's largest retail chains, such as Rite Aid, CVS, Walgreens, Target, Home Depot, Lord & Taylor, PetSmart, Marshalls, Pathmark, TJ Maxx, Family Dollar Stores and Dollar General.

33.     Participation in the Esteem network has been governed by an "Esteem Member Services Agreement," executed by the individual customer and Defendant.   Attached to and

incorporated into each Member Services Agreement was a brief list of operating standards called "Rules of Participation."

34.     Under the Rules of Participation, and as a contractual quid pro quo for being able to initiate an Esteem "inquiry" for the purpose of checking on the background of a job applicant, Esteem subscribers were required to "contribute" new records of theft incidents involving their own employees or customers.

35.     The Rules of Participation defined a reportable theft incident as containing the following four characteristics:

      a.  The incident had to involve a theft of merchandise, cash or company property, but a termination for non-criminal reasons or as a result of a company loss not strictly related to theft or fraud committed by that consumer was not supposed to get reported.

      b.  The individual who was the subject of the report had to be at least sixteen (16) years of age at the time of the incident.

      c.  The dollar value of the particular theft had to be at least $5.

      d.  The reported incident had to be supported by a "Voluntary Admission Statement" (VAS), signed by the individual.

36.     Despite Defendant's representation that employee terminations for non-fraudulent reasons or for violations of policies not strictly related to theft or fraud were not included in the Esteem database, Defendant never adopted any Rule of Participation or other operating standard that further defined the kinds of incidents that should be reported, nor did Defendant issue any guidance or directive to Esteem subscribers, or provide any training to subscribers, designed to ensure that terminations for non-fraudulent reasons or for violations of policies not strictly related to theft or fraud were kept out of the Esteem database.  On the contrary, Defendant permitted its employer customers to submit into Esteem any incident that caused them a monetary loss, as long

as (a) the customer, in its subjective judgment, considered the incident to be a theft and (b) it submitted an acknowledgement of responsibility for the loss signed by the employee.

37.     Although Defendant did make available a form Admission Statement for Esteem customers to use, it did not actually require customers to use the standard form.  On the contrary, Defendant permitted customers to use whatever form the customer wished to use even if such forms did not include any language indicating its intended use as an admission of theft.

38.     Besides the fact that Defendant administered the Esteem system without any objective, uniform standards defining what constitutes a "theft," and allowed customers to represent documents as being admission statements that were not labeled as such, Defendant also had no rules or standards requiring the customer to inform the employee signing the supposed admission statement about its intended use as a basis for a theft report to a national employer database.

39.     Defendant also imposed no standards concerning the necessary voluntariness of a supposed admission of theft it accepted into the database, and no restrictions or limitations on the methods used by customers to obtain statements.  As a result, store loss-prevention agents—who often have an employment incentive to obtain admission statements—were allowed the discretion to use deception and coercion to obtain statements.

40.     Defendant did not require the customer supplying a new Esteem report to notify the consumer subject of the report about the submission, nor did it require the customer to provide a copy of the VAS to the consumer at the time it was created and submitted to Defendant for inclusion in the database.

41.     During the years 2003 to 2013, Esteem was administered by a small operations unit (the "Esteem Unit") in Charlotte, North Carolina, consisting of as many as twelve (2003) or as few as four (2013) employees.

42.     The Esteem Unit workers responsible for "contributions" were responsible for creating a consumer file in the Esteem system.  That file would consist of two components, first, various standard fields of data (including name, address, birth date and Social Security number of the purported thief; the date and store location of the incident; and the amount of the theft; and a classification by type of theft) and second, an electronic image of the contributed VAS.

43.     When Defendant's Esteem Unit first uploaded a newly contributed VAS into the Esteem system it did not review the VAS for compliance with the Rules of Participation.  Rather, any review of the VAS by Defendant occurred, if at all, at such future time that another subscribing customer submitted a background inquiry regarding the same consumer in connection with an employment-related application.

44.     When Defendant received an Esteem inquiry regarding an applicant for employment, it searched its system and, if it discovered a possible match between the applicant's personal information and an Esteem record on file, it conducted a procedure it called "verifying" the incident report.  This "verification" activity consisted of a clerical comparison of three electronic files in its system:  (1) the personal data contained in the "inquiry" received from the subscribing member; (2) any incident data associated with that person in the database; and     (3) the VAS associated with the particular incident report.  If the clerk conducting the "verification" confirmed that the consumer named in the inquiry matched an incident report and that the VAS on file appeared to reference the amount of the theft and appeared to be signed by the consumer, Defendant would respond to the customer inquiry with a positive Esteem "hit" or "match."

45.     In every report that Defendant provided a customer regarding an Esteem hit, Defendant listed the facts about the theft incident in a standardized format, and represented that those facts were supported by a "verified" VAS.

46.     In "verifying" a VAS, Defendant did not require the statement to include the word "admit" or "admission", nor the word "theft."  Moreover, where the statement was ambiguous or incomplete—e.g., where the statement lacked an explicit acknowledgement of criminal intent or described circumstances which could be reasonably interpreted as a loss not rising to the level of a theft—Defendant did not require the contributing customer to furnish any further information clarifying the criminal nature of the incident and, instead, resolved all doubt in favor of the contributing customer.  The overriding operating principle used by Defendant in the verification process was that a VAS which the contributing customer regarded as an admission of a theft would be treated as such by Defendant.

47.     As a practical matter, an Esteem hit was generally fatal to a job applicant's employment.  This fact was understood by Defendant in its promotion of the product, representing the purpose of an Esteem search as helping its customers to avoid unwittingly hiring someone who had previously committed a theft and representing an Esteem hit as saving the customer from future theft by that individual.

48.     For an additional fee, Defendant provided a "scoring service" to its employer customers.  Under this service, customers developed an "adjudication matrix" that categorized various background facts—e.g., a conviction for a specified crime, a positive drug screen or an *Esteem* match—as rendering a job applicant Eligible, Ineligible, or "Decisional," and then Defendant would apply that matrix to "adjudicate" job applicants whose personal identifying information would be transmitted by the customer requesting the adjudication.

49.     Defendant promoted its scoring service as helping its customers make more consistent and efficient hiring decisions, by replacing "lengthy reports requiring your manual review and interpretation," with the ease and simplicity of these three adjudication scores.

50.     Typically, for a customer using this scoring service, an *Esteem* hit would result in the job applicant being classified as Ineligible for employment.

51.     Whether or not the employer used Defendant's scoring service, as a practical matter, employers paying for an Esteem search treated an Esteem match as a factor disqualifying the individual from employment.  Thus, as a practical matter, any consumer in the Esteem database was effectively unemployable within the universe of employers participating in Esteem.

52.     Many of Defendant's larger customers used Defendant's background screening services as the final stage of the hiring process, often submitting the background inquiry to Defendant after selecting the job applicant for employment.  In such circumstances, the potential employer had already decided to hire the consumer, conditioned only on the consumer clearing background checks, including an Esteem search.

53.     Defendant suspended operation of Esteem around August, 2013.

**B.     Facts Specific to Plaintiff Bakira Baker**

54.     Sometime in 2006 or 2007, Plaintiff's purse was stolen – including her wallet, license, and other personal items – while she was living in New Jersey.

55.     In or around March, 2011, Plaintiff applied for a part-time position with a store in the Family Dollar Stores chain in order to supplement her disability income.

56.     After tentatively selecting her for hire, Family Dollar Stores ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about March 29, 2011, Defendant issued a Background Report about Plaintiff to Family Dollar Stores.

57.     Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

58.     Unbeknownst to Plaintiff, the Background Report classified her as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Theft of Merchandise," relating to a shoplifting incident that occurred in a Rite Aid store in August, 2009, and listed the basis of the report as a "verified" admission statement.

59.     As a result of this Report, Plaintiff was rejected for hire by Family Dollar Stores.

60.     At the time, neither Family Dollar Stores nor Defendant provided her with a copy of the report or with any notice of her rights under the FCRA.

61.     As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of the report and of her VAS.

62.     The VAS relates to a shoplifting incident at a Rite Aid store in August, 2009, however the signature on the statement is not Plaintiff's and some of the identifying information supplied by the signator is incorrect.  It states she is 5'6" and 130 pounds when, in fact, she is 5'3" and over 200 pounds, and states an address on Prince Street in East Orange, a street where Plaintiff has never lived.

63.     Plaintiff did not shoplift anything, and did not sign the VAS.  Either another person with the same or similar name was the subject of the VAS in question, or Plaintiff is the victim of identity theft possibly related to her stolen purse and wallet years before.

64.     Plaintiff was unable to find employment, and has lived solely on her disability income throughout this time.

65.     Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**C.**     <u>**Facts Specific to Plaintiff Earl Wayne Brown**</u>

66.     In September, 2008, Plaintiff had been working as a pharmacy technician for approximately eight years at a Rite Aid store, and was also a training technician who trained other employees on Rite Aid's system.

67.     Rite Aid was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

68.     Sometime around September, 2008, Plaintiff was interrogated by store personnel about an accusation made by a co-worker who supposedly had seen Plaintiff consume a drink that, she believed, he had not paid for.  Although Plaintiff denied ever intentionally not paying for any consumables, he explained that, because employees were not permitted to make purchases while on the clock, there may have been occasions when he inadvertently had forgotten to pay for a drink or snack at the end of a shift. The store interrogators insisted that he select a number representing the total value of such items and, he believes, he selected, the offered number of $10.

69.     The interrogators also directed him to write a statement that described these occasions of inadvertent failure to pay for snack items and to include the $10 figure in the statement, giving him the impression that he needed to do this in order to preserve his job. Plaintiff complied with this direction and wrote a statement. However, he was not told the purpose of the statement and, more specifically, was certainly not informed that Rite Aid intended to submit the statement into a national theft database that would render him unemployable in his field of work, nor was he provided a copy of the statement.

70.     Following the interrogation, Plaintiff was terminated by Rite Aid, a termination for which he was able to receive unemployment compensation.

71.     In February, 2011 Plaintiff applied for a pharmacy technician job with a CVS store and had two very positive interviews.

72.     CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

73.     After tentatively selecting him for hire, CVS ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about February 2, 2011, Defendant issued a Background Report about Plaintiff to CVS.

74.     The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $10, occurring in a Rite Aid store in September 2008, and listed the basis of the report as a "verified" admission statement.

75.     As a result of this Report, Plaintiff was rejected for hire by CVS.

76.     In or about April, 2011, Plaintiff attempted to obtain a copy of the VAS in order to initiate a dispute with Defendant pursuant to 15 U.S.C. § 1681i(a), but Defendant failed to provide a copy of the VAS.

77.     In October 2011 Plaintiff obtained a job with an independent pharmacy that was not a participant in the Esteem system.

78.     With the assistance of counsel, Plaintiff was finally able to obtain a copy of the supposed VAS, a copy of which neither Rite Aid or Defendant had previously furnished to him.

79.     The VAS is facially not an admission of theft. On the contrary, it states in part that "over the course of the last year, I admit to taking merchandise not exceeding 10 dollars" for which "I had full intention to pay for. . . . Although it was against company policy, I intended to pay for items at the end of my shift and there were times I failed to do so."

80.     Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**D.    Facts Specific to Plaintiff David Allard**

81.     In September, 2006, Plaintiff had been working as an associate at a Rite Aid store in Michigan for six years.  Plaintiff was a valued and well-liked associate, who knew virtually every aspect of store operations.

82.     On or about September 1, 2006, he was interrogated by two Rite Aid Loss Prevention agents supposedly about suspected abuse of his employee discount account.  The interrogation lasted for about an hour, during which the agents accused him wrongly of causing thousands of dollars of losses to Rite Aid.

83.     The interrogation ended with Plaintiff acknowledging that he would sometimes help poor customers who were short of cash for their purchases, by using change from his own pocket and or by using his discount card to provide a few cents of price reduction. The agents insisted that he come up with an estimated sum for all such discounts over the course of his employment, and that he put this in writing. As directed, he prepared a written statement that included the following, "I am guilty of having a big heart.  Our store slogan is 'With us its personal,' I'm sorry I made it too personal. . . They asked me to write a dollar amount and I don't know, it only took off a couple cents each time, so like $50 or $100 over time might be right but I'm not sure."

84.     Rite Aid was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

14

85.     Plaintiff was not told the purpose of the written statement he was asked to create, and, more specifically was not informed that Rite Aid intended to submit the statement into a national employment database that would render him unemployable in his field of work.

86.     Plaintiff was informed Rite Aid would decide whether to fire or suspend him, so he quit.

87.     Plaintiff was not given a copy of the written statement.

88.     In April, 2010, Plaintiff applied for a job with a Home Depot store in in Michigan, concerning which he was selected for hire, conditional on passing a background check.  It was a very good job for Plaintiff's region in Michigan, paying $12 per hour plus benefits.

89.     Home Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

90.     After tentatively selecting him for hire, Home Depot initiated a background inquiry about Plaintiff from Defendant on or about April 14, 2010.

91.     On or about April 17, 2010, Defendant issued a Background Report about Plaintiff to Home Depot, which classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Theft of Merchandise and Unauthorized Discount" of $100, occurring in a Rite Aid store on September 1, 2006, and listed the basis of the report as a "verified" admission statement.

92.     As a result of this Report, Plaintiff's job offer was rescinded by Home Depot.

93.     At the time, neither Home Deport nor Defendant provided Plaintiff with a copy of the report or with any notice of his rights under the FCRA. All that he was told, orally, was, to the effect, that his background "came back coded red, on account of a theft at Rite Aid."

94.     As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of the report and of his VAS.

95.     The VAS is facially not an admission of theft.  At most it is an admission that he gave a regular poor customer cash and his employee discount, at an unquantifiable amount.  It is certainly not an admission of a theft of $100 in merchandise.

96.     Except for occasional odd jobs, Plaintiff was unable to find employment and had very little income from April 2010 until recently when he started a real estate apprenticeship.

97.     Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**E.      Facts Specific to Plaintiff Carmelinda Arpaio**

98.     Plaintiff has a long work history of managing retail stores.

99.     In July, 2010, Plaintiff was working as an assistant store manager at a CVS store in Newburgh, New York.

100.    On or about July 20, 2010, she was called into a back office by a district manager and two CVS Loss Prevention personnel. They proceeded to interrogate her about three issues:  (1) a report from another employee that she had left the store unattended; (2) questions about missing records from a $6.50 film developing charge that she had paid; and (3) a large overpayment on her paycheck which had already been reversed.  The interrogation lasted for at least an hour, during which, despite the absence of any evidence of any wrongdoing, she was required to explain these issues in a written statement.

101.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

102.    Plaintiff was not told the purpose of the statement and, more specifically was not informed that CVS intended to submit the statement into a national employment database that would render her unemployable in her field of work.

103.    Plaintiff was suspended that evening by CVS.

104.    Plaintiff was not given a copy of the statement.

105.    Within two weeks, Plaintiff had applied for an assistant manager job with a Duane Reade store, and received a call from a Duane Reade recruiter to follow-up with her.

106.    Duane Reade was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

107.    After tentatively selecting Plaintiff for hire, Duane Reade ordered a background report about Plaintiff from Defendant. As a result of that inquiry, in or around August 2010, Defendant issued a Background Report about Plaintiff to Duane Reade.

108.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match. The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $6.50, occurring in a CVS store on July 20, 2010, and listed the basis of the report as a "verified" admission statement.

109.    As a result of this Report, Plaintiff was rejected for hire by Duane Reade.

110.    Either Duane Reade or Defendant on behalf of Duane Reade provided her with a copy of the Background Report and notice of her rights under the FCRA, but did so *after* she had already lost the job at Duane Reade.

111.    Plaintiff then initiated a dispute with Defendant in writing and by telephone, pursuant to 15 U.S.C. § 1681i(a).

112.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about her in the database, thus, requiring her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

113.    After receiving Plaintiff's dispute, and even without providing her a copy of the so-called "voluntary admission statement," Defendant itself concluded that the report issued to Duane Reade had been inaccurate, and it sent a "revised" Background Report to Plaintiff in October, 2010. The revised report stated that the Esteem record "has been removed from this report" and scored her "eligible" for the Duane Reade job she had already lost.

114.    In April, 2011, Plaintiff applied for a job with PetSmart.

115.    PetSmart, too, was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

116.    After tentatively selecting her for hire, PetSmart ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about April 22, 2011, Defendant issued a Background Report about Plaintiff to PetSmart, scoring her "ineligible" for hire and describing the same Esteem Incident that was described in the earlier report to Duane Reade, *i.e.*, the report which Defendant had purportedly removed from Esteem in October, 2010.

117.    As a result of this Report, Plaintiff was rejected for hire by PetSmart.

118.    PetSmart orally told Plaintiff she had flunked her background check, but neither PetSmart nor Defendant provided her any written notice or a copy of the Background Report.

119.    Plaintiff again initiated a dispute with Defendant and, again, Defendant supposedly removed the false theft report about her from the Esteem system.

120.     On or about May 24, 2011, Plaintiff obtained an assistant store manager position at Home Depot, which is also a member of Esteem and which also had Defendant conduct an Esteem search.  This time, however, Defendant reported no match, scored her "eligible" and she was hired.

121.     Thus, from August 2010 to late May 2011, Plaintiff was unemployed in her field due to the inaccurate information in the Esteem system.

122.     Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

123.     As a result of the settlement in the *Goode* action, Plaintiff asked for a full file disclosure from Defendant, and, as a result, obtained a copy of the VAS and of the reports supposedly issued to Duane Reade and PetSmart.

124.     The VAS is facially not an admission of theft.  At most it was a signed statement that Plaintiff admitted not notifying her district manager when she left the store on one occasion.

125.     The Background Reports provided to her concerning the Duane Reade and PetSmart applications are not copies of the reports that resulted in her losing those two jobs. On the contrary, both are reports indicating that "a record was removed" and that she is "eligible" for hire.

F.     **Facts Specific to Plaintiff Michelle Barbare**

126.     Plaintiff is a trained pharmacy technician who, in August, 2012, applied for a pharmacy tech job with CVS.

127.     CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

128.     After tentatively selecting Plaintiff for hire, CVS ordered a background report about Plaintiff from Defendant.  Upon information and belief, as a result of that inquiry, on or about August 8, 2012, Defendant issued a Background Report about Plaintiff to CVS.

129.     Upon information and belief, the Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Theft of Merchandise" of approximately $21, occurring in a Rite Aid store in 2008.

130.     As a result of this Report, Plaintiff was rejected for hire by CVS.

131.     Either CVS or Defendant on behalf of CVS provided her with a copy of the Background Report and notice of her rights under the FCRA, but did so after she had already lost the job at Rite Aid.

132.     Plaintiff then initiated a dispute with Defendant by telephone, pursuant to 15 U.S.C. § 1681i(a).

133.     The reported Rite Aid incident was inaccurately reported as a theft; Plaintiff never committed any theft at Rite Aid.

134.     Plaintiff was previously employed by Rite Aid. On or about June 26, 2008, while at that job, she was directed by Rite Aid corporate personnel to a back room and interrogated about pills missing from the pharmacy.

135.     During the interrogation, after Plaintiff made clear that she did not take any pills, her questioner changed the subject of his questioning to a variety of topics concerning her own purchase of items in the store. At the insistence of the interrogator, she was instructed to complete a written statement about the topics covered, but was not given a copy.

136.     Rite Aid was also a participant in the Esteem system and was a party to a Member Services Agreement with Defendant. Unbeknownst to Plaintiff, Rite Aid submitted a theft report and a copy of Plaintiff's written statement to Esteem.

137.     Plaintiff was not told the purpose of the written statement, did not understand it to be an admission of theft, did not intend it as such, and was not informed that Rite Aid intended to submit the statement into a national theft database that would render her unemployable in her field of work.

138.     After being rejected for the CVS job based on the inaccurate theft report, Plaintiff initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

139.     In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about her in the database, thus, requiring her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

140.     Even without providing a copy of the VAS to Plaintiff, Defendant itself concluded that the theft report about Plaintiff had been erroneous and, as a result, it removed Plaintiff from the Esteem database and issued a revised report, classifying her as Eligible for the CVS job, on or about September 6, 2012.

141.     However, Defendant never notified Plaintiff that her dispute had been successful and, instead, left Plaintiff to assume that she was still in a theft database that would prevent her from obtaining work as a pharmacy technician.

142.     Plaintiff thereafter worked as a waitress, for a company that does not participate in the Esteem system, and earned less money than she would have earned as a pharmacy technician.

143.    Thus, Plaintiff was unemployed in her field, after going to school to become a pharmacy technician, due to the inaccurate information in the Esteem system.

144.    Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

145.    As a result of the settlement in the Goode action, Plaintiff requested a full file disclosure from Defendant.  It was in response to that request that Defendant provided her with a copy of the "revised" 2012 report to CVS and learned for the first time that she had removed from the Esteem database years earlier.

146.    Although Defendant produced a copy of the "revised" report, it did not include in the disclosure a copy of the original "Ineligible" report that had been sent to CVS. To this date, Plaintiff is still without a copy of the precise report that denied her work since 2012.

## G.    Facts Specific to Plaintiff Kelly Bauman

147.    In September, 2008, Plaintiff was working as a cashier at an Office Depot store in Florida.

148.    Office Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

149.    On or about September 18, 2008, she was interrogated by Loss Prevention personnel from Office Depot about her use of her rewards card and about someone else's bad check.

150.    Plaintiff recalls that her interrogators asked her to write a statement about the issues concerning which they were questioning her and that she did sign a statement that describe her innocence with regard to those issues, but they did not give her a copy.

151.    Plaintiff was not told the purpose of the statement and, more specifically was not informed that Office Depot intended to submit a report into a national employment database that would render her unemployable in her field of work.

152.    Plaintiff was terminated by Office Depot.

153.    After her termination, Plaintiff called Office Depot's corporate office to complain, and Office Depot confirmed they had no evidence about any bad check involving her.

154.    In December, 2010 Plaintiff applied for a cashier position with a CVS store.

155.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

156.    After tentatively selecting her for hire, CVS ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about December 2, 2010, Defendant issued a Background Report about Plaintiff to CVS.

157.    The Background Report Defendant provided CVS classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Cash Register Fraud" of $253.98, occurring in an Office Depot store on September 18, 2008, and listed the basis of the report as a "verified" admission statement.

158.    As a result of this Report, Plaintiff was rejected for hire by CVS.

159.    CVS provided her with a copy of the adverse Background Report and a notice of her rights under the FCRA.

160.    She then initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

161.    Defendant denied Plaintiff's dispute, and she was told they "didn't know" how long the theft report would be on her record.  Plaintiff was very upset and scared, because she had primarily worked as a cashier throughout her career, and had a family to help support.

162.    As a result of the settlement in the Goode action, Plaintiff was able to learn there is, in fact, no VAS relating to the Office Depot incident in Defendant's records.

163.    Other than a job at a dry cleaner's she had in 2009, with an employer not participating in Esteem, she has not been able to work in her field.

164.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**H.    Facts Specific to Plaintiff Leticia Buckner**

165.    In April, 2009, Plaintiff was working as a cashier at an Office Depot store in Maryland.

166.    Office Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

167.    On or about April 27, 2009, she was interrogated by store personnel about eating candy that she had not paid for, and at their request, signed a statement in which she stated that she had intended to pay for the candy during a break but had forgotten to do so.

168.    Plaintiff was not told the purpose of the statement and, more specifically was not informed that Office Depot intended to submit the statement into a national employment database that would render her unemployable in her field of work.

169.    Plaintiff was terminated by Office Depot.

170.    Plaintiff was not given a copy of the statement.

171.    In May, 2010 Plaintiff applied for a cashier job with a CVS store in North Carolina where she was temporarily living.

172.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

173.    After tentatively selecting her for hire, CVS ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about May 13, 2010, Defendant issued a Background Report about Plaintiff to CVS.

174.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match. The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $44, occurring in an Office Depot store on April 27, 2009, and listed the basis of the report as a "verified" admission statement.

175.    As a result of this Report, Plaintiff was rejected for hire by CVS.

176.    In September, 2010 Plaintiff applied for a cashier job at a Home Depot in Maryland.

177.    Home Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

178.    After tentatively selecting her for hire, Home Depot ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about September 24, 2010, Defendant issued a Background Report about Plaintiff to Home Depot, describing the same Esteem Incident that was described in the earlier report to CVS.

179.    As a result of this Report, Plaintiff was rejected for hire by Home Depot.

180.    In January, 2013, Plaintiff applied for a cashier job at a Dollar General store in Maryland.

181.    Dollar General was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

182.    After tentatively selecting her for hire, Dollar General ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about January 22, 2013, Defendant

issued a Background Report about Plaintiff to Dollar General, describing the same Esteem Incident that was described in the earlier reports to CVS and Home Depot.

183.     As a result of this Report, Plaintiff was rejected for hire by Dollar General.

184.     All or some of these potential employers provided her with a copy of the adverse Background Report and a notice of her rights under the FCRA.

185.     At some point during this period when Plaintiff was being rejected for jobs based on her being in the Esteem system, she initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

186.     In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about her in the database, thus, requiring her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

187.     Defendant denied Plaintiff's dispute.

188.     As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of her VAS.

189.     The VAS is facially not an admission of theft. At most it is a signed statement that Plaintiff ate $2 of candy that she inadvertently forgot to pay for at the end of her shift. It is certainly not an admission of a theft of $44 in merchandise.

190.     Sometime in 2013, and without informing Plaintiff, Defendant removed Plaintiff's record from the Esteem system.

191.     During the holiday season of 2014, Plaintiff obtained a seasonal job at a Kohl's store in Maryland.

192.    Kohl's was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

193.    Other than a fast food job she briefly had in 2010, at an employer not participating in Esteem, this was the first retail job she was able to get following the 2009 report by Office Depot.

194.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

## I.      Facts Specific to Plaintiff Patricia Burney

195.    In June, 2007, Plaintiff was the manager of a store within the Family Dollar Stores chain and had been working there for the previous fourteen years.

196.    On or about June 29, 2007, a corporate employee who she had never seen before, introduced himself and proceeded to ask her questions about whether she had taken unpaid items from the store, claiming that she had been observed drinking a bottle of water that she took from the drink case. She explained that she would always pay for items she consumed during the work day, but her interrogator persisted and demanded her to admit that, over the course of her fourteen years with the company, she may have forgotten to pay for drinks or snack items.

197.    Plaintiff believes that the store interrogator got her to write a statement, describing what she remembered about her payment for food and drink items consumed during the work day over the course of her fourteen years in the store, but he did not give her a copy of the statement and Plaintiff does not recall exactly what he had her write.

198.    At the insistence of the interrogator, besides the written statement, Plaintiff also agreed to pay Family Dollar Stores $500 in the belief that this cooperation was a condition of her continued employment.

199.    After the interrogation was completed, Plaintiff was terminated by Family Dollar Stores.

200.    Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

201.    Unbeknownst to Plaintiff, Family Dollar Stores contributed a theft report about her to the Esteem system.

202.    In September, 2011 Plaintiff applied for a supervisory job with a CVS store.

203.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

204.    After tentatively selecting Plaintiff for hire, CVS ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about September 19, 2011, Defendant issued a Background Report about Plaintiff to CVS.

205.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report to CVS was described as a "Theft of Merchandise" occurring in a store within the Family Dollar Stores chain on June 29, 2007, and listed the basis of the report as a "verified" admission statement.

206.    As a result of this action by Defendant, Plaintiff was rejected for hire by CVS.

207.    CVS and/or Defendant on its behalf provided her with a copy of the adverse Background Report and a notice of her rights under the FCRA.

208.    Plaintiff believes and therefore that during the same time period other employers beside CVS also rejected her for jobs based on the same information in the Esteem database.

209.    At some point during this time when Plaintiff was being rejected for jobs based on her being in the Esteem system, she initiated a dispute by telephone with Defendant, pursuant to

15 U.S.C. § 1681i(a).

210.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the supposed VAS pertaining to the Esteem Incident about her in the database, thus, requiring her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

211.    Defendant denied Plaintiff's dispute.

212.    Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

213.    After losing out on the management position at CVS, Plaintiff worked for several years in a non-supervisory position with a retail employer not participating in Esteem.

214.    As a result of the settlement in the *Goode* action, Plaintiff obtained a full file disclosure from Defendant, and, as a result, obtained a copy of the document Defendant treated as the VAS.

215.    The 2007 written statement which she remembers being directed to prepare at Family Dollar Stores was not produced, and, therefore, is apparently not in the Esteem database. The so-called VAS produced by Defendant consisted of only a signed promise to repay $500 to Family Dollar Store, without any description of the incident triggering this promise to pay. By itself, this document is not an admission of theft of $500 in merchandise.

216.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**J.      Facts Specific to Plaintiff Keisha Cotton**

217.    In December, 2007, Plaintiff was wrongly accused of shoplifting by Loss Prevention personnel from a Mervyn's store in California.

218.   After shopping in the store, she was confronted by a security agent in the parking lot as she was getting into her car. He insisted that she had stolen various items of clothing, despite searching her bags and finding nothing.

219.   Plaintiff was shaken by the accusations, because she was on probation for an unrelated criminal matter (which was later dismissed and expunged from her criminal history). At the insistence of the agent, she followed him back into the store, and, after a lengthy interrogation, signed a Loss Prevention form that the agent prepared. The form included a pre-printed statement that "I hereby admit to the theft of…," after which, at the direction of the agent, she wrote in the following words:   "4 bras and 4 panties I believe is what LP said but I'm not sure."

220.   Mervyn's was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant. After the incident, Mervyn's personnel contributed a theft report to the predecessor owner and operator of the Esteem system.

221.   At the time, Mervyn's induced Plaintiff to sign the statement, Plaintiff was not told its purpose and, more specifically was not informed that Mervyn's intended to submit the statement into a national employment database that would render her unemployable with many national employers.

222.   Plaintiff was not given a copy of the statement.

223.   In January, 2010 Plaintiff applied and was selected for a job with a Home Depot store in Texas, conditional on her passing a background screen.

224.   Home Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

225.   Home Depot ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about January 14, 2010, Defendant issued a Background Report about Plaintiff to Home Depot.

226.   As a result of this Report, Home Depot informed Plaintiff the previous job offer was rescinded.

227.   Neither Home Depot nor Defendant provided her any written notices about the report at the time. Plaintiff did not realize that it was inaccurate report about the Mervyn's incident that was the reason she lost the job opportunity.

228.   Years later, as a result of a file disclosure Plaintiff obtained after receiving the class notice in the *Goode* litigation, Plaintiff obtained a copy of the January 2010 Background Report. In that report, Defendant classified Plaintiff as "Ineligible" for the Home Depot position based on an Esteem match. The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $86, occurring in a Mervyn's store in December, 2007, and listed the basis of the report as a "verified" admission statement.

229.   Sometime in 2011, Plaintiff applied for a job at a Ross Dress for Less store.

230.   Ross was also a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

231.   After tentatively selecting her for hire, Ross ordered a background report about Plaintiff from Defendant. As a result of that inquiry, Defendant issued a Background Report about Plaintiff to Ross that, upon information and belief, described the same Esteem Incident that was described in the earlier report to Home Depot.

232.   As a result of this Report, Plaintiff was rejected for hire by Ross, even though she had previously worked for Ross and had a good employment record there.

233.     As with the Home Depot report, Ross did not provide Plaintiff with a copy of the report. All it did was inform her that the source of the report was Defendant and she could contact Defendant for details.

234.     Plaintiff did contact Defendant for more information but Defendant did not provide her any information at that time.

235.     As a result of the settlement and class notice in the *Goode* action, Plaintiff was finally able to obtain a copy of her VAS from Defendant.

236.     The VAS—apparently contributed by Mervyn's to the Esteem database in 2007—is not facially an admission of theft, because it includes handwritten notations that Plaintiff was "not sure" what she was accused of stealing, and only that "[she] believe[d] this is what LP said…."

237.     Other than temporary jobs, at employers not participating in Esteem, Plaintiff was out of work until February 2012 when she started working for a medical transportation company (also not participating in Esteem), and worked there until she started working at a funeral company in May 2014 (also not participating in Esteem).

238.     Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**K.     Facts Specific to Plaintiff Tiffany Ellis**

239.     In December, 2010, Plaintiff was an employee of Walgreens, having worked in the store for ten years with an excellent employment record. Among her duties was to promote the sale of nail polish by offering samples to customers.

240.     On or about December 10, 2010, Plaintiff was interrogated by corporate personnel about two issues, first, regarding the nail polish samples offered to customers, and, second, her use of her employee discount card to provide sale prices to customers without a card.

241.    As part of the interrogation, the interrogator insisted that she had to write a statement that acknowledged wrongdoing regarding these two issues. Plaintiff was not told the purpose of the statement and, more specifically was not informed that Walgreens intended to submit the statement into a national employment database that would render her unemployable in her field of work.

242.    Plaintiff cooperated and prepared a handwritten statement, but was not given a copy. Afterwards, she was terminated.

243.    Walgreens was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

244.    In June, 2011 Plaintiff applied for a management job with a CVS store.

245.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

246.    After tentatively selecting Plaintiff for hire, CVS ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about June 29, 2011, Defendant issued a Background Report about Plaintiff to CVS.

247.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as an "Unauthorized Discount" of $50, occurring in a Walgreens store in December, 2010, and listed the basis of the report as a "verified" admission statement.

248.    As a result of this Report, Plaintiff was rejected for hire by CVS.

249.    In July, 2011 Plaintiff applied for a management job at a store within the Family Dollar Stores chain.

250.    Family Dollar Stores was a participant in the Esteem system and was a party to a

Member Services Agreement with Defendant.

251.    After tentatively selecting her for hire, Family Dollar Stores ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about July 20, 2011, Defendant issued a Background Report about Plaintiff to Family Dollar Stores, describing the same Esteem Incident that was described in the earlier report to CVS.

252.    As a result of this Report, Plaintiff was rejected for hire by Family Dollar Stores.

253.    All or some of these potential employers provided Plaintiff with a copy of the adverse Background Report and a notice of her rights under the FCRA.

254.    At some point during this period when Plaintiff was being rejected for jobs based on her being in the Esteem system, she initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

255.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about her in the database, thus, requiring her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

256.    Defendant denied Plaintiff's dispute.

257.    The VAS—which Plaintiff was able to obtain after her dispute had been denied by Defendant—is facially not an admission of theft.

258.    Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

259.    Eventually, after calling Walgreens repeatedly, she was able to persuade Walgreens to direct Defendant to revise the report that it had been unwilling to do on its own. Defendant "revised" the previous "Ineligible" reports sometime in 2012, now showing her to be an "Eligible"

job candidate.

260.     Once Defendant removed her from the Esteem system, Plaintiff was able to obtain

full-time work in retail.

**L.**     **Facts Specific to Plaintiff Anthony Graziosi**

261.     In July, 2009, Plaintiff was nineteen years old and working as a photo technician at

a CVS store, when a supervisor told him that he had been caught on tape using an eyeglass repair

kit from the shelf to fix his glasses.

262.     Following that interaction, on or about July 29, 2009, Plaintiff was called in by

corporate personnel and interrogated about the eyeglass repair kit. He was also questioned about

the supervisor's further accusations that he had failed to pay for drinks consumed during the work

day. He explained that he had put the $1 repair kit back on the shelf after using it and that with

regard to not paying for drinks, the only time that happened was when the store manager had

rewarded employees with drinks after they helped to unload delivery trucks.

263.     Despite Plaintiff's explanations, the interrogator insisted that he make a written

statement about both issues and acknowledge wrongdoing in order to keep his job. In accordance

with those instructions, he did write a statement, but was not given a copy.

264.     CVS was a participant in the Esteem system and was a party to a Member Services

Agreement with Defendant.

265.     Plaintiff was not told the purpose of the statement and, more specifically was not

informed that CVS intended to submit the statement into a national employment database that

would render him unemployable in his field of work.

266.     Plaintiff was terminated by CVS.

267.     Around 2011, Plaintiff was selected for several jobs, pending his passing a

background check. These jobs included a photo technician job at a Walgreens store and a photo lab supervisor position with CVS.

268.    Like CVS, Walgreens was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

269.    Defendant issued Background Reports to both employers, classifying him as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as "Theft of Merchandise" occurring in a CVS store in July 2009, and listed the basis of the report as a "verified" admission statement.

270.    As a result of this, Plaintiff was rejected for both jobs.

271.    Either Walgreens or CVS, or Defendant on their behalf, provided Plaintiff with a copy of the adverse Background Report and a notice of his rights under the FCRA. As a result, Plaintiff initiated an FCRA dispute with Defendant, pursuant to his rights under 15 U.S.C. § 1681i(a).

272.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about him in the database, thus, requiring him to dispute the accuracy of the report about him without being able to see the document which was the sole basis of the reported incident.

273.    Defendant denied Plaintiff's dispute.

274.    Plaintiff believes and therefore avers that he was also denied a job at Home Depot as a result of a similar adverse report by Defendant.

275.    Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

276.    As a result of the settlement in the *Goode* action, Plaintiff asked for a full file

disclosure from Defendant, and, as a result, obtained a copy of the VAS.

277.    The VAS is facially not an admission of theft.  At most it is a signed statement that Plaintiff "forgot to pay for drinks over the last couple of [years]."  It is not an admission of a theft of merchandise.

## M.    Facts Specific to Plaintiff Kenneth Hock

278.    Plaintiff is a senior citizen who worked for years as an electrician and selling kitchens for Lowe's in Missouri, and then did part-time work in retail as a means of supplementing his Social Security income.

279.    In April, 2007, Plaintiff was working part-time at an Office Depot store in Illinois.

280.    Office Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

281.    On or about April 8, 2007, after being interrogated by store personnel about an earlier purchase he had made using his company discount, Plaintiff was terminated from his job.

282.     In or about April, 2010 Plaintiff applied for a job with a CVS store in Illinois after meeting with the store manager who had encouraged him to apply for the position.

283.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

284.    After tentatively selecting him for hire, CVS ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about April 16, 2010, Defendant issued a Background Report about Plaintiff to CVS.

285.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match. The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $115.27,

occurring in an Office Depot store on April 8, 2007, and listed the basis of the report a "verified" admission statement.

286.     As a result of the "Ineligible" report to CVS, Plaintiff was rejected for hire by CVS.

287.     Plaintiff was never provided with a copy of the adverse Background Report and a notice of his rights under the FCRA.

288.     CVS did tell him orally, however, that the Background Report had been issued by Defendant, so Plaintiff contacted Defendant and initiated a dispute pursuant to 15 U.S.C. § 1681i(a).

289.     In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about him in the database, thus, requiring him to dispute the accuracy of the report about him without being able to see the document which was the sole basis of the reported incident.

290.     Defendant denied Plaintiff's dispute and, in response to his telephone inquiry, further informed Plaintiff that, in effect, "that's the information we got from our customer and that's the way it's going to stay."

291.     Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

292.     Plaintiff was discouraged from seeking other employment after learning he was being reported as a thief in a national employment database.  This caused him significant emotional stress, for a number of reasons. He had taken pride in the reputation for honesty he had built up during his long work life, which reputation appeared now to be shattered. He also worried about being able to support himself only from his Social Security. The stress was a factor in causing a heart attack.

293.     As a result of the settlement in the *Goode* class action, Plaintiff was able to obtain a copy of his file from Defendant, which included a copy of the report that Defendant issued to CVS. However, as a result of that file disclosure, he also learned that there is, in fact, no VAS supporting the information about him in the 2007 report from Office Depot, meaning that the representation by Defendant about there being a "verified admission statement" backing the Office Depot information was false.

**N.     Facts Specific to Plaintiff Janae Ling**

294.     In May, 2008, Plaintiff was 19 and working as a cashier at an Office Depot store.

295.     Office Depot was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

296.     On or about May 12, 2008, Plaintiff was interviewed by store personnel about her customary use of a store courtesy card as a means of providing discounts to customers who did not have a card with them.

297.     Even though Plaintiff had been trained to provide this courtesy to customers, she was informed during the interview that this was not proper procedure. She believes that she was asked to write a statement about her practice regarding courtesy-card discounts, but if she did, she was never provided a copy and was certainly not informed that Office Depot intended not only to treat her statement as an admission of theft but also intended to submit information about the incident into a national theft database that would render her unemployable in retail.

298.     During the years following the Office Depot termination there were several occasions where, pursuant to Member Services Agreements with other retail employers who were participants in the Esteem system, Defendant determined that Plaintiff was ineligible for hire solely as a result of the 2008 report that Office Depot had submitted to Esteem.

299.    In August, 2010 after Plaintiff was tentatively selected for hire by Family Dollar Stores, that potential employer asked Defendant to provide a background report about her.

300.    Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

301.    As a result of that inquiry by Family Dollar Stores, on or about August 27, 2010, Defendant issued a Background Report about Plaintiff. The report classified Plaintiff as "Not Recommended" based on an Esteem match. The "Esteem Incident" in the report was described as "Cash register fraud" of $2,394.56, occurring in an Office Depot store on May 12, 2008 and the report further stated that there was a "verified admission statement" supporting the report.

302.    As a result of this Report, Plaintiff was rejected for hire by Family Dollar Stores.

303.    Around October, 2011, Plaintiff was tentatively selected for hire by CVS, pending the results of a background report, which CVS ordered from Defendant.

304.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

305.    On or about October 4, 2011, Defendant issued a Background Report about Plaintiff to CVS, describing the same Esteem Incident that was described in the earlier report to Family Dollar Stores and adjudicating her as "Do Not Hire."

306.    As a result of this Report, Plaintiff was rejected for hire by CVS.

307.    At some point during this period when Plaintiff was being rejected for jobs based on her being in the Esteem system, she initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

308.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the supposed VAS pertaining to the Esteem Incident about her in the database, thus,

required her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

309.    Defendant denied Plaintiff's dispute.

310.    As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of her file from Defendant, which included a copy of the reports that Defendant issued to Family Dollar Store and CVS. However, as a result of that file disclosure, she also learned that there is, in fact, no VAS supporting the information about her in the 2008 report from Office Depot, meaning that the representation by Defendant about there being a "verified admission statement" backing the Office Depot information was false.

311.    Sometime in 2013, and without informing Plaintiff, Defendant removed Plaintiff's record from the Esteem system.

312.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**O.      Facts Specific to Plaintiff Laree McKinney**

313.    On or about December 19, 2006, when Plaintiff was eighteen years old, she went shopping with two friends in a Marshalls store after going to the movies together. All three of them were detained by store security personnel.  Her two friends were caught with unpaid items on them;  Plaintiff had no items and had done nothing wrong.

314. All three were charged with shoplifting.  The charges against Plaintiff were ultimately expunged.

315.    Marshalls was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

316.     Unbeknownst to Plaintiff, Marshalls submitted an Esteem theft report to Defendant, using as the VAS, a "Loss Prevention Incident Data Sheet" that its Loss Prevention personnel prepared. Although they had Plaintiff sign the form, they did not provide her a copy or inform her of their intent to submit the statement into a national employment database that would render her unemployable in retail jobs.

317.     In December, 2008, Plaintiff applied for a job with CVS.

318.     CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

319.     After tentatively selecting her for hire, CVS ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about December 9, 2008, Defendant issued a Background Report about Plaintiff that scored her as "Do Not Hire." The report included a summary of the Marshall's incident, stating that Plaintiff was involved in a "Theft of Merchandise" of $116.93, and further stated that this information was based on a "verified" admission statement.   Thus, even though she had a clean criminal record as a result of the expungement she was reported to a potential retail employer as an admitted shoplifter.

320.     As a result of this Report, Plaintiff was rejected for hire by CVS.

321.     In 2010, Plaintiff applied for another job and the same thing happened. She believes the employer was Home Depot.

322.     This time, although she got nothing in writing about the false theft, Plaintiff figured out that she had a right to dispute the accuracy of the report and she did so.

323.     As a result of a reinvestigation conducted pursuant to 11 U.S.C. § 1681i(a), Defendant itself concluded that the theft report about Plaintiff had been inaccurate, it removed Plaintiff from the Esteem database, and, on or about October 8, 2010, created a "revised report" in

its system. According to this "revised report," Plaintiff was eligible for the CVS job for which she had been classified "Do Not Hire" two years earlier.

324.    However, Defendant provided no notice to Plaintiff that she won her dispute, leaving her, instead, with the false impression that she was still in the Esteem database and therefore effectively barred from work in the retail sector.

325.    As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of her file from Defendant. This disclosure included a copy of the Marshalls incident report from 2006, which functioned as the VAS in the report that Defendant made to CVS in 2008 and which Defendant itself concluded in its 2010 reinvestigation was not a valid admission of theft.  The disclosure did not include any information about the adverse background report issued to an employer in 2010.

326.    By being falsely reported to Home Depot or to such other prospective employer as a thief and by not informing Plaintiff about its 2010 deletion of her Esteem record following her successful dispute, Defendant caused Plaintiff to suffer lost wages, reputational and emotional harm.

## P.    **Facts Specific to Plaintiff Edny Michel**

327.    In 2003, Plaintiff immigrated to the United States from Haiti, and Haitian Creole is his native language.

328.    On or about December 21, 2005, Plaintiff was working in the photo processing department at a Walgreens store in Florida, while taking English courses.

329.    On that date, Plaintiff was interrogated by store personnel about not charging a customer for four photographs. Plaintiff explained that, in accordance with his training, after the customer complained about the quality those four photos within the processing package, he did

43

not charge her for those four, while charging for the rest.

330.    According to his interrogators, Plaintiff's understanding of company policy was incorrect and accused him of having resulted in a loss to the company. He was directed to write a statement in English, and falsely told that if he did not, he would not get his paycheck.

331.    Plaintiff wrote a statement as he was ordered to do, as best as his language ability at the time enabled him to, describing what he had done. Walgreens did not give him a copy.

332.    He was then terminated.

333.    Plaintiff believes and therefore avers that the accusation about the four unpaid photos was a pretext to get rid of him because he had been unwilling to change his hours to a shift that would conflict with his English classes.

334.    Walgreens was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

335.    Unbeknownst to Plaintiff, Walgreens contributed a theft report and a copy of Plaintiff's written statement to Esteem.

336.    Following the termination, Plaintiff quickly found another job, at a CVS store. He recalls having a background screen but apparently passed the screen because he was hired.

337.    After working at CVS for over four years, in February, 2011, Plaintiff was being considered for promotion to a supervisor position that would provide him greater responsibility and an approximately $4.50 per hour raise.

338.    At the time of the promotion application in 2011 (but possibly not when he was hired in 2006), CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

339.    After tentatively selecting him for promotion, CVS ordered a background report

about Plaintiff from Defendant.  As a result of that inquiry, on or about February 11, 2011, Defendant issued a Background Report about Plaintiff to CVS, classifying him as "Ineligible" for employment.

340.    The sole basis of the "Ineligible" was an Esteem match.  The "Esteem Incident" in the report was described as "Cash Register Fraud / Theft of Merchandise" of $5.03, occurring in a Walgreens store in 2006. The report also listed, as the basis of the report, the existence of a "verified" admission statement.

341.    As a result of this Report, Plaintiff lost the opportunity to be promoted to supervisor.  This was very humiliating and frustrating for Plaintiff, who watched others around him being promoted around, including those he had trained, while being branded as having committed a theft that had never occurred.

342.    Either CVS, or Defendant on behalf of CVS, provided him with a copy of the adverse Background Report and a notice of his rights under the FCRA, but did so *after* the negative "Ineligible" report had been issued to CVS.

343.    After getting a copy of the report, Plaintiff initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

344.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about him in the database, thus, requiring him to dispute the accuracy of the report about him without being able to see the document which was the sole basis of the reported incident.

345.    Defendant denied Plaintiff's dispute.

346.    As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of his VAS.

347.    The VAS is facially not an admission of theft.  At most it is a signed statement that Plaintiff did not charge a customer for four allegedly sub-par photographs worth a total of $1.16. It is certainly not an admission of a theft of $5.03 in merchandise, nor of any form of cash register fraud in any amount.

348.    In or around March, 2012, after he finished an accounting program, Plaintiff obtained an accounting position at an employer not participating in Esteem, and stopped working at CVS.

349.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

350.    As a result of the settlement in the *Goode* action, Plaintiff asked for a full file disclosure from Defendant, and, as a result, obtained a copy of the statement that Defendant was treating as the VAS.

351.    The VAS is facially not an admission of theft of $5.06 in store merchandise.  The statement merely explains that "I did a mistake so 4 pictures I didn't charge," that "the picture wasn't good" and that he had agreed to pay back 4 times 29 cents, the charge for each of the photos.

## Q.    Facts Specific to Plaintiff Erica Reese

352.    Plaintiff began working for CVS while in high school, and, by two years later, was a full-time pharmacy technician in the store. As part of their duties, pharmacy technicians regularly process purchases for customers at cashier stations.

353.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

354.    On or about May 21, 2004, Plaintiff was interviewed by store personnel about her use of her family's Extra Care Card—the discount CVS card offered to all customers—for

purchases made by customers checking out at her cashier station. As she explained, when a customer without an Extra Care Card made a purchase, the store kept a card at the registers for cashiers to be able to use as a courtesy to customers. On the rare occasion she was not able to locate the store card, she would use her own card in order to enable the customer to obtain the appropriate discount.

355.    The interview turned into an interrogation, accusing her of earning some portion of a $27 coupon credited to her card from purchases made non-family members, and insisting that she make and sign a written statement about her use of her discount card.  Plaintiff refused to sign a statement, and quit after she was threatened with demotion from pharmacy technician to cashier for refusing to cooperate.

356.    Unbeknownst to her, CVS submitted an Esteem report about her, falsely representing her as having admitted committing coupon fraud in the amount of $27.

357.    Over the course of the next several years, Plaintiff lost several job opportunities as a result of background reports issued by Defendant to prospective employers. This included a pharmacy technician job with Walgreens that she lost, based on a job application made in in December, 2010.

358.    Walgreens was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

359.    After tentatively selecting her for hire, Walgreens ordered a background report about Plaintiff from Defendant.  In response to Walgreen's inquiry, Defendant issued a Background Report that classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "$27 coupon fraud," occurring in a CVS store on May 21, 2004, and it listed the basis of the report as a "verified" admission statement.

360.    As a result of this Report, Plaintiff was rejected for hire by Walgreens.

361.    Walgreens provided her with a copy of the adverse Background Report and a notice of her rights under the FCRA.

362.    After Plaintiff learned she was being rejected for jobs based on her being in the Esteem system, she initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a).

363.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of the VAS pertaining to the Esteem Incident about her in the database, thus, requiring her to dispute the accuracy of the report about her without being able to see the document which was the sole basis of the reported incident.

364.    Plaintiff never received a response from Defendant after her dispute, but upon information and belief, Defendant denied her dispute.

365.    As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a complete file disclosure from Defendant. As a result of this disclosure, she learned that, in fact, there was no VAS in her file corresponding to May 2004 reported theft incident.

366.    Plaintiff is a nationally certified pharmacy technician.  Other than work outside her field and some temporary positions at smaller non-chain pharmacies, at employers not participating in Esteem, for the years she was wrongly in the Esteem database she was not able to obtain work in her field.

367.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

**R.**    **Facts Specific to Plaintiff Lavone Richardson**

368.    In May, 2012, Plaintiff was selected for a job at a CVS store, conditional on his passing a background check.

369.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

370.    On or about May 24, 2012, Defendant issued a Background Report about Plaintiff to CVS.

371.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $22.99, occurring in a Marshall's store on November 23, 2011, and listed the basis of the report as a "verified" admission statement.

372.    As a result of this Report, Plaintiff was rejected for hire by CVS.

373.    Plaintiff does not recall seeing the report at that time, but believes CVS sent him a letter telling him he had a theft record.

374.    Plaintiff has a clean criminal record and never committed a theft at a Marshall's store.

375.    On or about November 23, 2011, Plaintiff was in a Marshall's store and, for no apparent reason, had been apprehended by Loss Prevention personnel in the store. He remembers being interrogated and may have been asked to write a statement, but he was not given any documents that day, nor was he charged.

376.    Because he did not have a criminal record, Plaintiff did not understand why CVS had been told that he was a thief.

377.    In or around the same period of time that Plaintiff applied for work at CVS, he also applied to Target.

378.    Target was also a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

379.    After tentatively selecting him for hire, Target ordered a background report about Plaintiff from Defendant.  Upon information and belief, as a result of that inquiry, Defendant issued a similar adverse report to Target, grading him ineligible for employment based on a theft report about the same incident at Marshall's.

380.    As a result of this Report, Plaintiff was rejected for hire by Target.

381.    As a result of the settlement in the Goode action, Plaintiff was able to obtain a full file disclosure from Defendant and confirmed that there is no VAS concerning the incident at Marshall's.

382.    The VAS is facially not an admission of theft, because there was no VAS in his file.

383.    Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

S.    **Facts Specific to Plaintiff Christopher Sain**

384.    The year after Plaintiff graduated high school Plaintiff was working as a cashier at a store in the Family Dollar Stores chain.  A few weeks into his job, on or about September 22, 2007, he was interrogated by Family Dollar Stores personnel about not ringing up items that did not show on the scan. He acknowledged that, on several occasions when he was in the store alone and had no supervisor to ask for help, he had done that in order to move the customer line.

385.    The interrogator told him it was improper to allow unscanned items to leave the store, and insisted that he estimate the combined value of all items that did not scan. In response to Plaintiff's comment that "it couldn't be more than $20," the interrogator said that "we'll go with $20." The interrogator prepared a written agreement on a Family Dollar Stores form, in which Plaintiff agreed to pay back $20.

386.    He was also asked to prepare a written statement describing what he had done. In that statement he described the items he remembered not scanning as "$2 bleach," "$1 towels," tissues, and candles.

387.    Plaintiff was not told the purpose of the statement and, more specifically was not informed that Family Dollar Stores intended to submit the statement into a national employment database that would render him unemployable in his field of work.

388.    Plaintiff was not given a copy of the written statement or of the agreement to pay back $20.

389.    After the interrogation was completed, Plaintiff was terminated by Family Dollar Stores.

390.    Plaintiff believes the $20 he promised to pay back was deducted from his last paycheck.

391.    Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

392.    Family Dollar Stores contributed a theft report the Esteem system, and provided copies of both the statement and the repayment agreement as a supposed "admission statement."

393.    Plaintiff was terminated by Family Dollar Stores.

394.    For approximately the next year, Plaintiff worked temporary warehouse jobs through an employment agency.  Thereafter, he returned to school, earned his associates degree and started looking for full-time jobs.

395.    In September, 2010 Plaintiff applied for a cashier job with a CVS store.

396.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

397.    After tentatively selecting him for hire, CVS ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about September 13, 2010, Defendant issued a Background Report about Plaintiff to CVS.

398.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $20, occurring in a Family Dollar Stores store on September 22, 2007, and listed the basis of the report as a "verified" admission statement.

399.    As a result of this Report, Plaintiff was rejected for hire by CVS.

400.    Either CVS, or Defendant on behalf of CVS, provided him with a copy of the adverse Background Report and a notice of his rights under the FCRA, but did so *after* Defendant had sent the "ineligible" report to CVS.

401.    When he got a copy of the report, Plaintiff realized for the first time that he was reported as a thief in a national database, and was very discouraged from applying for more retail jobs.  He returned to the temporary warehouse work that he did before obtaining his associates degree.  It was very degrading, requiring him to wait in line sometimes for hours for hourly work assignments.

402.    Finally, around April 2013, Plaintiff became a licensed forklift operator and obtained full-time work but in a field he did not want to be.

403.    As a result of the settlement in the *Goode* action, Plaintiff was able to obtain a copy of the Family Dollar Stores documents maintained in the Esteem database by Defendant.

404.    The so-called "VAS" is not an admission of theft.  At most it is a signed statement referencing $4 of loss that he remembered causing and a promise to pay back $20.

405.    Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

## T.    Facts Specific to Plaintiff Teresa Sanders

406.    Plaintiff is a career retail worker, mostly in management positions, in stores and gyms.

407.    On or about November 3, 2012, Plaintiff was working in a supervisory position at a CVS store while studying for an undergraduate degree, when a loss-prevention official of CVS directed her to answer questions about her use of her CVS discount card.

408.    The interrogation focused on Plaintiff's use of the card to resolve customer price disputes, and to provide employee discounts to an employee who did not have her own card, both of which, the loss-prevention interrogator claimed, violated company policy.

409.    The interrogatory directed Plaintiff to provide written answers to questions he wrote on a company "Statement" form, which Plaintiff did, believing she had no choice but to do so. She was not given a copy of the statement.

410.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

411.    Plaintiff was not told the purpose of the statement and, more specifically was not informed that CVS intended to submit the statement into a national theft database that would render her unemployable in her field of work.

412.    Plaintiff was terminated by CVS.

413.    In January, 2013 Plaintiff applied for a management position at a new store in the Family Dollar Stores chain that was opening down the street from her home.

414.     Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

415.     After selecting her for hire to run the store, conditional on her passing a drug test and background screen, Family Dollar Stores ordered a background report about Plaintiff from Defendant.   As a result of that inquiry, on or about January 11, 2013, Defendant issued a Background Report about Plaintiff to Family Dollar Stores.

416.     The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.   The Esteem "Theft Incident" in the report was described as "Reward Card Fraud and Unauthorized Discount" of $56 occurring in a CVS store on November 3, 2012. The report also listed as the basis of the report a "verified" admission statement.

417.     As a result of this report to Family Dollar Stores, the job offer to Plaintiff was rescinded.

418.     Family Dollar Stores informed her that she had flunked her background screen, but failed to provide her with a copy of the Background Report.

419.     With this unexplained cloud over her personal and professional reputation, Plaintiff resigned herself to working at a lower paid position at a gym.

420.     Plaintiff suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

421.     As a result of the settlement in the *Goode* action, Plaintiff asked for a full file disclosure from Defendant, and, as a result, obtained a copy of the Background Report and of the underlying VAS.

422.    The VAS is facially not an admission of theft.  At most it is a signed statement that Plaintiff provided discounts to customers and thought she was "doing the correct thing for situation not self."  It is not an admission of a theft of $56 in merchandise.

**U.     Facts Specific to Plaintiff Jointineise Scurry**

423.    In November, 2012, Plaintiff was working at a store in the Family Dollar Stores chain.

424.    Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

425.    On or about November 6, 2012, she and two other employees were called into a back room of the store and interrogated by corporate personnel regarding their supposed misuse of a $3 printed store coupon that they each had used for a purchase.

426.    During the interrogation, Plaintiff was directed to draft a written statement about that purchase, which she did. She was not told the purpose of the statement and, more specifically, was not informed that Family Dollar Stores intended to submit the statement into a national theft database that would render her unemployable in her field of work.

427.    Plaintiff was terminated by Family Dollar Stores.

428.    Plaintiff was not given a copy of the statement.

429.    In June, 2013, Plaintiff applied for a job with a Dollar General store.

430.    Dollar General was also participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

431.    After tentatively selecting her for hire, Dollar General ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about June 21, 2013, Defendant issued a Background Report about Plaintiff to Dollar General.

432.    The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The "Esteem Incident" in the report was described as "coupon fraud" of $42, occurring in a store in the Family Dollar Stores chain on November 6, 2012, and listed the basis of the report as a "verified" admission statement.

433.    As a result of this Report, Plaintiff was rejected for hire by Dollar General.

434.    As a result of the settlement in the *Goode* action, Plaintiff obtained a copy of her file with Defendant, which included, for the first time, a copy of the VAS that was the basis of the report Defendant made to Dollar General.

435.    The VAS is facially not an admission of having committed coupon fraud of $42 or any theft.  At most it is a signed statement that Plaintiff used a $3 coupon.  It is not an admission of a theft of merchandise, and it contains no reference to $42.

436.    As a result of this false theft report, Plaintiff suffered lost wages, emotional distress and reputational harm.

## V.    Facts Specific to Plaintiff Candace Smith

437.    Plaintiff has been working in retail since she was 15 years old. In August, 2005, when she was 18 and working at a store within the Family Dollar Stores chain, she was accused of retail theft, fired and arrested.  Plaintiff did not learn any specifics of the accusations from Family Dollar Stores, and the police released her without any charges being filed.

438.    At the time, Family Dollar Stores was a participant in the Esteem system and regularly contributed theft reports to Defendant for inclusion in the database.

439.    In the years following her employment at Family Dollar Stores, Plaintiff worked in various fast-food restaurants, a gas station and as a security job. In May 2011, she had an

opportunity to return to employment in a retail store, having been selected for a job with Dollar General, subject to passing a background screen.

440.    On May 12, 2011, Defendant conducted a background search of Plaintiff at the request of Dollar General and issued an adverse report to Dollar General, scoring her "Do Not Hire" based on an Esteem match. To this date, Plaintiff has never seen the actual report issued to Dollar General, but, upon information and belief, alleges that Defendant reported her as having committed a theft of merchandise in the amount of $400 at Family Dollar Stores in August, 2005, supported by a "verified" admission statement.

441.    Dollar General was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

442.    As a result of the report issued by Defendant, Plaintiff was rejected for hire by Dollar General.

443.    As a result of Plaintiff's inquiries to Dollar General about the reason for the adverse background report, she was provided contact information for Defendant and, with that information, initiated a dispute with Defendant pursuant to 15 U.S.C. § 1681i(a).

444.    In conformity to its standard practice, Defendant did not provide Plaintiff with a copy of its file, including the supposed VAS pertaining to the Esteem Incident about her in the database, and thus, required her to dispute the accuracy of a report about her she was not able to see.

445.    Defendant denied Plaintiff's dispute, informing her verbally, in response to Plaintiff's further inquiries, that she would have to get Family Dollar Stores to direct Defendant to remove the record about the 2005 incident.  Plaintiff called Family Dollar Stores, and was informed

they would so instruct Defendant, but she never received any information from Defendant informing her that the negative Esteem information about her was, in fact, removed.

446.    As a result of the settlement in the *Goode* action, Plaintiff asked and obtained a copy of her file from Defendant in October, 2014. Included in the file disclosure was a copy of a Background Report, purportedly issued to Dollar General on May 12, 2011. However, that copy— which states it was "updated" on June 9, 2011—states that Plaintiff was scored Eligible for the job, based on a removal of a previously reported record. Thus, the copy provided was not of the adverse report that was actually sent to Dollar General, but rather, of a "revised" report that, Plaintiff believes and therefore alleges, was never reported to Dollar General or to her, until the October, 2014 file disclosure.

447.    Also included in the file disclosure was a copy of written statement, dated August 17, 2005, in Plaintiff's hand-writing, that states little more than "I am willing to pay back $400 to Family Dollars Inc. for lost merchandise." Plaintiff does not recall the circumstances regarding this statement, nor does she have any idea of the facts underlying the stated $400 figure.

448.    It appears from the information contained in the "revised" report that, as of June 9, 2011, Defendant had removed Plaintiff from the Esteem database, but had never informed her of that fact, thus, leaving her with the impression for three more years that she was barred from employment opportunities because of a theft that never occurred and about which she was never properly informed.

449.    Plaintiff suffered damages in connection with the false theft report, including loss of wages and emotional and reputational harm.

**W.**     **Facts Specific to Plaintiff S. Harold Spruill**

450.     In November, 2007, Plaintiff was working at a store in the Family Dollar Stores chain.

451.     On or about November 6, 2007, someone from the Family Dollar corporate office came to Plaintiff's store and interviewed all the employees, purportedly, about improving the profitability of the store.

452.     During the course of his interview, Plaintiff was interrogated about his payment for drinks consumed during the work day. He explained that he would ordinarily put his name on the container and would leave it at the cashier station to remind himself to pay for it when he had a break. Challenged by the interrogator that he could not be certain that he had never forgotten to pay, Plaintiff acknowledged that there may have been a rare occasion when this occurred. Pressed further to put a value on drinks consumed but not paid for over the course of his employment, Plaintiff told him it would not be more than $5.

453.     Plaintiff's interrogator insisted that he prepare a written statement, which he did, but he was not given a copy. After the interview ended, Plaintiff was terminated.

454.     Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

455.     Plaintiff was not told the purpose of the statement and, more specifically was not informed that Family Dollar Stores intended to submit the statement into a national employment database that would render him unemployable in his field of work.

456.     In December, 2011 Plaintiff had been working at a store in the Hardee's franchise and was chosen to be promoted to store manager.

457. Hardee's was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

458. After tentatively selecting him for promotion, Hardee's ordered a background report about Plaintiff from Defendant. As a result of that inquiry, on or about December 21, 2011, Defendant issued a Background Report about Plaintiff to Hardee's.

459. The Background Report classified Plaintiff as "Ineligible" based on an Esteem match. The "Esteem Incident" in the report was described as a "Theft of Merchandise" of $5, occurring in a store within the Family Dollar Stores chain on November 6, 2007, and listed the basis of the report as a "verified" admission statement.

460. Plaintiff was initially denied the promotion solely based on that theft report.

461. Plaintiff initiated a dispute with Defendant, pursuant to 15 U.S.C. § 1681i(a), challenging the accuracy of the theft report.

462. Defendant did not provide him a copy of the VAS underlying the Esteem record about him, so he was forced to dispute the report without being able to see the key document underlying the report.

463. Nonetheless, for reasons he does not know, Defendant eventually sustained his dispute, removed him from the Esteem database, and, in a new report to Hardee's, re-classified him as "Eligible" for employment.

464. As a result of the initial report that falsely reported him as a thief, Plaintiff's promotion to manager was delayed for approximately four months. In addition to that loss of income, Defendant also caused him emotional and reputational harm.

465. As a result of the settlement in the *Goode* action, Plaintiff obtained a full file disclosure from Defendant, which included a copy of the VAS.

466.    The so-called VAS is facially not an admission of theft.  At most it is an admission of perhaps inadvertently forgetting to pay for a consumed soft drink "probably like 2-3 times," at a cost of "probably $5 or less."

### X.    Facts Specific to Plaintiff Charlene Taylor

467.    In July, 2011, Plaintiff had been working at CVS for a several years as a cashier and, after a promotion, as a shift supervisor.

468.    CVS was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

469.    On or about July 13, 2011, Plaintiff was directed to a back room by a corporate loss-prevention person to answer his questions about her use of her personal store discount card, in order to provide discounts to customers without a card. After learning from her interrogator that this violated company policy, she agreed not do it anymore.

470.    However, her interrogator was not satisfied and instructed her to answer in writing, written questions that he wrote on a form "Statement." She did so, believing she had no choice if she wanted to keep her job, but he did not give her a copy of what she wrote.

471.    Plaintiff was not told the purpose of the statement and, more specifically was not informed that CVS intended to submit the statement into a national theft database that would render her unemployable in her field of work.

472.    Plaintiff was terminated by CVS.

473.    In or around July 2012, Plaintiff applied for a supervisory position with a store in the Family Dollar Stores chain.

474.    Family Dollar Stores was a participant in the Esteem system and was a party to a Member Services Agreement with Defendant.

475.     After tentatively selecting her for hire, Family Dollar Stores ordered a background report about Plaintiff from Defendant.  As a result of that inquiry, on or about July 23, 2012, Defendant issued a Background Report about Plaintiff to Family Dollar Stores.

476.     The Background Report classified Plaintiff as "Ineligible" based on an Esteem match.  The Esteem "Theft Incident" in the report was described as "Rewards Card Fraud" of $73.50, occurring in a CVS store on July 13, 2011, and listed the basis of the report as a "verified" admission statement.

477.     As a result of this Report, Plaintiff was rejected for hire by Family Dollar Stores.

478.     As a result of the settlement in the *Goode* action, Plaintiff obtained a full file disclosure from Defendant, and, as a result, obtained a copy of the Background Report and of the underlying VAS.

479.     The VAS is facially not an admission of theft or fraud.  At most it is a signed statement that Plaintiff gave customers a sales price.

480.     Plaintiff has suffered damages as a result of being falsely reported as a thief, including loss of wages and emotional and reputational harm.

## V.     CAUSES OF ACTION

### COUNT ONE – Violation of 15 U.S.C. § 1681e(b)

**Claim by Plaintiffs Baker, Brown, Allard, Arpaio, Barbare, Bauman, Buckner, Burney, Cotton, Ellis, Graziosi, Hock, Ling, Michel, Reese, Richardson, Sain, Sanders, Scurry, Smith, Spruill, Taylor**

481.     Plaintiffs reallege and incorporate by this reference all preceding allegations.

482.     15 U.S.C. § 1681e(b) provides that:  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

483.    The Esteem report identifying Plaintiffs as thieves, based on a "verified admission statement" on file, was not accurate in that:

      a.    Plaintiffs never stole anything from Rite Aid;

      b.    Defendant never had any document on file which could reasonably be characterized as an unambiguous, signed admission of theft by Plaintiffs in support of the theft reports Defendant issued to his/her prospective employer; and

      c.    Defendant's so-called "verification" of the statements was a sham, because of the facial insufficiency of the VAS and its failure to ensure that Plaintiffs had a copy of the VAS.

484.    The inaccuracy of the reports about Plaintiffs that Defendant published to his/her prospective employers was due to Defendant's failure to follow reasonable procedures designed to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b).  This failure was not the result of isolated instances of human error, but rather, was the result of the manner in which Defendant negligently and/or willfully designed and operated a system in reckless disregard of the truth and of the reputation and personal interests of the subjects of Esteem reports.  The overriding principle guiding Defendant's operation of the Esteem system was not accuracy, but rather, respecting the whim and wishes of its customers.

485.    The damages suffered by Plaintiffs were caused in substantial part by this violation of the FCRA.

## COUNT TWO – Violation of 15 U.S.C. § 1681b(b)(3)

**Claim by Plaintiffs Baker, Brown, Allard, Arpaio, Barbare, Bauman,
Buckner, Burney, Cotton, Ellis, Graziosi, Hock, Ling, Michel, Reese,
Richardson, Sain, Scurry, Smith, Spruill, Taylor**

486.    Plaintiffs reallege and incorporate by this reference all preceding allegations.

487.    15 U.S.C. § 1681b(b)(3) provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

488.    For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(1)(B)(ii), or that is "made in connection with" an employment application and is adverse to the consumer's interest.  15 U.S.C. § 1681a(k)(1)(B)(iv).

489.    Under Defendant's scoring service, an adjudication of "Ineligible" (or such equivalent term selected by the particular employer customer) was an "adverse action" within the meaning of the above-mentioned statutory definition.

490.    In rendering adjudications of "Ineligible" (or its equivalent term), Defendant used written communications of information in its Esteem database, bearing on consumers' character and reputation for the purpose of serving as a factor in establishing such consumers' eligibility for employment.  Accordingly, such information, including, specifically, the VAS for each such consumer, constituted "consumer reports," as defined by 15 U.S.C. § 1681k(f).

491.    The purpose of this section of the FCRA is "to afford employees time to discuss reports with employers or otherwise respond before adverse action is taken."  *Goode v. LexisNexis*

*Risk & Information Analytics Group, Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (internal quotation omitted).

492.    In the *Goode* action, this Court already ruled that when Defendant used its Esteem records, on behalf of an employer customer, to classify a job applicant as "ineligible," it was required to comply with 15 U.S.C. § 1681b(b)(3).  *Goode*, 848 F. Supp. 2d at 538-543.

493.    Because Plaintiffs are members of the certified class in *Goode*, it is the law of the case that Defendant violated 15 U.S.C. § 1681b(b)(3) when it used its Esteem records to classify him/her as ineligible for hire, and communicated that classification, and a copy of the Esteem Incident report about him/her to his/her prospective employer, before providing him/her with the required information.

494.    Without even knowing the false accusation underlying the adverse background report, Plaintiffs were left in limbo, and were unable to assert their FCRA rights concerning which they were never advised.

495.    Some portion of Plaintiffs' damages were caused and/or prolonged by Defendant's violations of 15 U.S.C. § 1681b(b)(3).

### COUNT THREE – Violation of 15 U.S.C. § 1681i(a)

**Claim by Plaintiffs, Barbare, Bauman, Buckner, Burney, Ellis,
Graziosi, Hock, Ling, Michel, Reese, Smith**

496.    Plaintiffs reallege and incorporate by this reference all preceding allegations.

497.    When Plaintiffs initiated their dispute concerning the accuracy of their Esteem report, Defendant became obligated under 15 U.S.C. § 1681i(a) to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" (emphasis added).

498.    This "reasonable reinvestigation" obligation is a "grave responsibility," 15 U.S.C. § 1681a(4), which "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (1997).

499.    As a matter of standard practice and procedure, Defendant did not perform this "grave responsibility" with regard to Esteem disputes.  On the contrary, the beginning and end of its so-called "reinvestigation" process was to ask the customer who furnished the original Esteem report what to do regarding the consumer dispute, and then to do whatever the furnishing customer decided.  If the customer recommended that the Esteem record should—as stated in the standard form it sent the customer—"stand as is," that is what Defendant did; if the customer recommended that the record should be revised or deleted, Defendant did that.  In practice, therefore, it parroted; it did not conduct an independent and reasonable reinvestigation of accuracy.

500.    As part of Defendant's reinvestigation obligation, any item of information in an Esteem file subject to a dispute which it could not verify, or which was objectively unverifiable, had to be deleted from the file.  15 U.S.C. § 1681i(a)(5).

501.    The reinvestigation conducted by Defendant in this case was a sham in that, in fact, there is no VAS supporting the theft report that it sent to CVS. The supposed theft at Office Depot was, therefore, unverified and unverifiable.

502.    When a consumer dispute is sustained, the consumer reporting agency is required not only to delete the inaccurate or unverifiable report, it is also required to notify the employer that was sent the report about the error. By failing to delete Plaintiff's Esteem record, and, then, failing to inform CVS of the error—as it was required to do by 15 U.S.C. § 1681i(a)(6)— Defendant caused Plaintiff to lose the CVS job.

503.    But Defendant's error caused damage beyond the loss of the CVS job in that her job search efforts were chilled by the existence of this false information about her, which Defendant unreasonably and wantonly refused to delete.

504.    Some or all of Plaintiffs' damages were caused by Defendant's violation of 15 U.S.C. § 1681i(a).

## COUNT FOUR – Violation of 15 U.S.C. § 1681g(a)

### Claim by Plaintiffs Arpaio and Smith

505.    Plaintiffs reallege and incorporate by this reference all preceding allegations.

506.    The FCRA mandates that a consumer reporting agency provide consumers upon request an accurate copy of their complete file with all of the information sold about them to third parties. *See* 15 U.S.C. § 1681g(a).

507.    Specifically, each consumer reporting agency is required by the FCRA to provide consumers with copies of their consumer files without charge in certain circumstances, including if they have received an adverse action including denial of employment. *Id.*

508.    The term "file," when used in connection with information on any consumer, means "all of the information on that consumer recorded and retained by a consumer credit reporting agency, regardless of how the information is stored." *See* 15 U.S.C. § 1681a(g).

509.    "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report" and an FCRA "'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010), citing *Gillespie v. Trans Union, LLC*, 482 F.3d 907, 909 (7th Cir. 2007).

510.    As a matter of standard practice and procedure, Defendant did not comply with its duties in FCRA Section 1681g with regard to Esteem reports.  On the contrary, it never provided Plaintiffs with a copy of their complete file, in particular, the actual reports that were furnished to Duane Reade and PetSmart and caused Plaintiffs to lose those job opportunities.

## VI.    PRAYER FOR RELIEF

WHEREFORE, pursuant to 15 U.S.C. § 1681n and/or § 1681o, Plaintiffs seek an award of actual damages, along with reasonable attorney's fees and costs.


Date:   November 25, 2015                _/s/  James A. Francis_____
                                         James A. Francis
                                         John Soumilas
                                         Lauren KW Brennan
                                         FRANCIS & MAILMAN, PC
                                         100 S. Broad Street, 19th Floor
                                         Philadelphia, PA 19110
                                         (215) 735-8600

                                         Irv Ackelsberg
                                         LANGER GROGAN & DIVER, PC
                                         1717 Arch Street, Suite 4130
                                         Philadelphia, PA 19103
                                         (215) 320-5660

                                         *Attorneys for Plaintiff*